1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT WOOTEN, an
     individual,
11
                    Plaintiff,                No. CIV S-11-1791 MCE DAD PS
12         v.

13   COUNTRYWIDE HOME LOANS
     INC., ARGENT MORTGAGE, LLC,
14   CITIGROUP, OCWEN LOAN              FINDINGS AND RECOMMENDATIONS
     SERVICING, LLC, WESTERN
15   PROGRESSIVE, LLC, THERE [sic]
     PREDACESSORS [sic], SUCCESSORS,
16   AGENTS, ASSIGNEES AND
     THERE [sic] CORRELATES[1],
17
                    Defendants.
18   _____/

19            This matter came before the court on May 4, 2012, for hearing of defendants'

20   motions to dismiss pro se plaintiff Robert Wooten's amended complaint.  Attorney Steven Son

21   appeared telephonically for defendants Ocwen Loan Servicing, LLC ("Ocwen") and Western

22   Progressive, LLC ("Western Progressive"), attorney Feather Baron appeared telephonically for

23   defendant Countrywide Home Loans ("CHL") and plaintiff appeared in person at the hearing on

24   his own behalf.  Oral argument was heard and the motions were taken under submission.

25   _____

26        [1]  The caption has been amended to reflect the caption found in plaintiff's amended
     complaint.  (Am. Compl. (Doc. No. 27.))

                                         1

BACKGROUND

In his amended complaint plaintiff alleges as follows.  Beginning in 1994 through 2002 plaintiff had two home loans from CHL in connection with two different properties.  (Am. Compl. (Doc. No. 27) at 4.[2])  In 2002, plaintiff sought a third loan from CHL to purchase a residence located at 1637 W. Houston in Stockton, California, and was told that he would first have to "divest himself of the two existing properties prior to obtaining a new loan."  (Id. at 5.) By the time plaintiff sold the two properties, however, 1637 W. Houston was no longer for sale. (Id.)  Plaintiff located a similar residence for sale in the 2400 block of W. Houston.  (Id.) Plaintiff then sought a loan but CHL denied plaintiff's application.  (Id.)  Plaintiff's realtor referred plaintiff to a loan broker who was able obtained a loan for plaintiff.  (Id.)  Surprisingly in light of CHL's denial of his previous application, the loan plaintiff in fact procured was from CHL.  (Id.)

In May of 2005, plaintiff refinanced his CHL loan through SDI Financial with a loan obtained from defendant Argent Mortgage Company, LLC ("Argent").[3]  (Id. at 6.)  Plaintiff entered into the loan agreement with Argent believing that if he paid on the loan for two years without any late payments he would be able to again refinance his loan at a lower interest rate. (Id.)  In 2007, after two years of timely loan payments, plaintiff contacted Argent to inquire about the refinancing process and was told that Argent was not refinancing any loans at that time.  (Id.) In August of 2007, defendant Ocwen Loan Servicing, LLC began servicing plaintiff's loan.  (Id. at 7.)  In 2008, the adjustable rate on plaintiff's loan adjusted upwards, costing plaintiff seven to eight hundred dollars per month in additional mortgage payments.  (Id. at. 6-7.)  Eventually plaintiff defaulted on his loan and foreclosure proceedings commenced.  (Doc. No. 2-2 at 72.)

---

[2]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[3]  It is not clear whether plaintiff has served Argent Mortgage with a summons and complaint.  To date, Argent has not appeared in this action.

2

1    On June 6, 2011, plaintiff filed his original complaint in the San Joaquin County

2  Superior Court, alleging claims for (1) negligent misrepresentation, (2) fraudulent concealment,

3  (3) intentional misrepresentation, (4) violation of California Civil Code § 2923.5, (5) violation of

4  California Business & Professions Code § 17200, (6) breach of contract and (7) violation of the

5  Racketeer Influenced and Corrupt Organization Act (" RICO"), 18 U.S.C. § 1961 et seq., against

6  CHL, Western Progressive, Ocwen, Citigroup and Argent Mortgage.  On June 23, 2011, plaintiff

7  obtained an ex parte order from the San Joaquin County Superior Court enjoining the foreclosure

8  proceedings.  (Doc. No. 2-2.)   Subsequently, on July 6, 2011, defendants Western Progressive

9  and Ocwen removed the action to federal court based on plaintiff's federal RICO claim.  (Doc.

10  No. 2.)

11    Following the filing of the original complaint, and before removal of the action to

12  this court, plaintiff executed a loan modification agreement with Ocwen.  (Doc. No. 8 at 1.)  The

13  pending trustee's sale was cancelled.  (Id. at 2.)  On February 1, 2012, the undersigned dismissed

14  plaintiff's complaint and granted him leave to file an amended complaint.  (Doc. No. 26.)

15  Plaintiff filed his amended complaint on March 2, 2012.  (Am. Compl. (Doc. No. 27.))

16  Defendant CHL filed a motion to dismiss on March 16, 2012.  (Doc. No. 31.)  That same day

17  defendants Ocwen and Western Progressive also filed a motion to dismiss.  (Doc. No. 34.)

18  Plaintiff filed an opposition to CHL's motion to dismiss on April 5, 2012.  (Pl.'s Opp.'n (Doc.

19  No. 37.))  Plaintiff has not filed an opposition to Ocwen's motion to dismiss.[4]  CHL filed a reply

20  to plaintiff's opposition on April 26, 2012.  (Doc. No. 38.)

21  /////

22  /////

23

24   [4]  At the hearing on defendants' motions, plaintiff represented that he had never received
   Ocwen's motion to dismiss.  Defendant Ocwen filed a proof of service with the court reflecting
   that defendant's motion was served on plaintiff via first class mail at plaintiff's address of record.
25  (MTD (Doc. No. 34) at 10.)  Based upon the analysis and recommendation set forth below, the
   court finds it unnecessary to seek plaintiff's written opposition to defendant Ocwen's motion to
26  dismiss.

1

STANDARD

2          The purpose of a motion to dismiss pursuant to Rule 12(b)(6)[5] is to test the legal

3    sufficiency of the complaint. <u>N. Star Int'l v. Ariz. Corp. Comm'n</u>, 720 F.2d 578, 581 (9th Cir.

4    1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5    sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901

6    F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

7    relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A

8    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

9    the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v.</u>

10   <u>Iqbal</u>,  556 U.S. 662,___, 129 S. Ct. 1937, 1949 (2009).

11          In determining whether a complaint states a claim on which relief may be granted,

12   the court accepts as true the allegations in the complaint and construes the allegations in the light

13   most favorable to the plaintiff. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Love v.</u>

14   <u>United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

15   stringent standards than formal pleadings drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519,

16   520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

17   form of factual allegations. <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th

18   Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

19   an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949.  A

20   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

21   elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  <u>See also Iqbal</u>, 129 S. Ct. at 1950

22   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

23   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

24   facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

25

26          [5]  Unless otherwise noted, all references to a "Rule" are to the Federal Rules of Civil
     Procedure.

4

1  not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>,

2  459 U.S. 519, 526 (1983).

3          In ruling on the motion, the court is permitted to consider material which is

4  properly submitted as part of the complaint, documents that are not physically attached to the

5  complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on

6  them, and matters of public record.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir.

7  2001).

8                                    <u>ANALYSIS</u>

9  I.  <u>Rule 8</u>

10         The minimum requirements for a civil complaint in federal court are as follows:

11             A pleading which sets forth a claim for relief . . . shall contain (1) a
               short and plain statement of the grounds upon which the court's
12             jurisdiction depends . . . , (2) a short and plain statement of the
               claim showing that the pleader is entitled to relief, and (3) a
13             demand for judgment for the relief the pleader seeks.

14  Fed. R. Civ. P. 8(a).

15         Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a

16  complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that

17  state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); <u>Jones v.

18  Community Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers 'labels

19  and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'  Nor

20  does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual

21  enhancements.'"  <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555, 557).  A plaintiff

22  must allege with at least some degree of particularity overt acts which the defendants engaged in

23  that support the plaintiff's claims.  <u>Jones</u>, 733 F.2d at 649.  A complaint must also contain "a

24  short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief

25  sought."  Fed. R. Civ. P. 8(a)(1) & 8(a)(3).

26  /////

                                        5

1          Here, the allegations found in plaintiff's amended complaint fail to satisfy the

2   pleading requirements set forth in Rule 8.  In this regard, although the caption for plaintiff's

3   amended complaint lists eight causes of action, within the amended complaint itself only three

4   causes of action are clearly alleged.  For example, the caption of the amended complaint states a

5   cause of action for "SECURITIES ACTS VIOLATIONS."  (Am. Compl. (Doc. No. 27) at 1.)

6   The amended complaint, however, aside from containing a vague and general discussion of the

7   Securities Acts of 1933 and 1934, does not clearly set forth any such claim[6] nor does it allege

8   facts stating the elements of a Securities Act claim plainly or succinctly.[7]  Moreover, with respect

9   to the three causes of action that plaintiff clearly attempted to allege, the amended complaint fails

10  to specify which causes of action plaintiff is attempting to pursue against which named

11  defendant.  Accordingly, defendants' motions to dismiss could be properly granted for this reason

12  alone.

13  II.  Civil RICO Claim

14          Of the three claims that are clearly alleged in the amended complaint, the only one

15  that could provide a basis for federal jurisdiction over this action is plaintiff's civil RICO claim

16  in which plaintiff alleges that "Defendant CHL is a criminal [enterprise] that has knowingly

17  conducted and participated in a criminal conspiracy which affected interstate commerce and was

18  conducted by and through the mail and wire services."  (Am. Compl. (Doc. No. 27) at 15.)

19  Plaintiff alleges that CHL implemented and coordinated the solicitation of people with poor

20  credit for mortgage loans on fraudulently overvalued property and then caused those loans to be

21

22          [6]  The undersigned notes that defendant CHL asserts that the amended complaint does not
    allege a Securities Act claim, but instead "only three causes of action for RICO violations,
23  constructive fraud and fraud," (Doc. No. 31 at 7 fn 1), while defendant Ocwen asserts that the
    amended complaint attempts to allege a Securities Acts claim but that "plaintiff's Securities Acts
24  claim is unintelligible on the whole . . ."  (Doc. No. 34 at 4.)

25          [7]  Plaintiff argues in his amended complaint that "Defendants alleged deceptive conduct
    arose from a broad based national campaign" that is "common knowledge" and therefore "there
26  is no need to plead elements of particularity and or specificity . . ."  (Am. Compl. (Doc. No. 27)
    at 12.)

1   sold to unsuspecting investors.  (Id.)  With respect to plaintiff's loan, he alleges that it was

2   "fraudulently inflated because the value ascribed to the property does not adhere to . . .

3   comparable sales, replacement cost, or income potential."  (Id. at 16.)

4           As was the case with plaintiff's original complaint, the conclusory allegations

5   found in his amended complaint are vague and wholly insufficient to state a cognizable  RICO

6   claim.  To state a RICO claim, a plaintiff must allege:  (1) conduct, (2) of an enterprise, (3)

7   through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to

8   plaintiff's business or property.  Sanford v. Memberworks, Inc., 625 F.3d 550, 557 (9th Cir.

9   2010); Walter v. Drayson, 538 F.3d 1244, 1247 (9th Cir. 2008); Grimmett v. Brown, 75 F.3d

10  506, 510 (9th Cir. 1996).  The alleged enterprise must exist "separate and apart from that

11  inherent in the perpetration of the alleged [activity]."  Chang v. Chen, 80 F.3d 1293, 1300-01

12  (9th Cir. 1996).  A "pattern of racketeering activity" means at least two criminal acts enumerated

13  by statute.  18 U.S.C. § 1961(1), (5) (including, among many others, mail fraud, wire fraud, and

14  financial institution fraud).  These so-called "predicate acts" under RICO must be alleged with

15  specificity in compliance with Rule 9(b).  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806

16  F.2d 1393, 1400-01 (9th Cir. 2004); see also Lancaster Community Hospital v. Antelope Valley

17  Hospital Dist., 940 F. 2d 397, 405 (9th Cir. 1991) (holding with respect to the predicate act of

18  mail fraud that a plaintiff must allege with "particularity the time, place, and manner of each act

19  of fraud, plus the role of each defendant in each scheme"); Alan Neuman Productions, Inc. v.

20  Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988); Pineda v. Saxon Mortgage Services, No. SacV

21  08-1187 JVS, 2008 WL 5187813, at *4  (C.D. Cal. Dec., 10, 2008) ("It is not enough for

22  [plaintiff] to rely on mere labels and conclusions" to establish a RICO claim but rather, plaintiff

23  must give each defendant notice of the particular predicate act it participated in and must allege

24  each predicate act with specificity).

25          Here, the complaint offers no factual allegations in support of plaintiff's claim, let

26  alone specific facts sufficient to meet the heightened pleading requirements applicable to fraud

7

1   claims under Rule 9(b).[8]  In this regard, plaintiff does not mention defendants Ocwen or Western

2   Progressive in his RICO claim, much less advise either of its alleged role in the purported

3   scheme.[9]  Aizusss v. Commonwealth Equity Trust, 847 F. Supp. 1482, 1490-91 (E.D. Cal. 1993)

4   (dismissing RICO claim where predicate fraud claim was inadequately pled).

5              With respect to defendant CHL, plaintiff alleges that the "criminal activity" CHL

6   engaged in consisted of "soliciting people with inferior credit" for predatory lending, supported

7   by fraudulent appraisals, and then selling those loans to investors "to continue its criminal

8   activity . . ." (Am. Compl. (Doc. No. 27) at 15.)  Addressing the failure of the amended

9   complaint to state the identity of any such person involved in the alleged criminal activity,

10  plaintiff argues in his opposition to the pending motion that "there is only one of each involved

11  in this action and their names will be revealed after discovery." (Pl.'s Opp.'n (Doc. No. 37) at 4.)

12  Such general allegations, however, devoid of reference to identities, time, date, and place, are

13  insufficient to meet the heightened pleading requirements of Rule 9(b).  See McAnelly v. PNC

14  Mortg., No. 2:10-cv-02754-MCE-GGH, 2011 WL 6260537, at *7 (E.D. Cal. Dec. 15, 2011)

15  (plaintiff's allegation that defendants used "intentional nondisclosure, fraud, and creation of

16  fraudulent loan documents" to "perpetuate a fraud" had "not sufficiently tethered the specific

17  conduct falling within RICO to the specific defendants in order to demonstrate a plausible

18

---

19      [8]  Circumstances that must be stated with particularity pursuant to Rule 9(b) include the
20  "time, place, and specific content of the false representations as well as the identities of the
    parties to the misrepresentations." Sanford v. Memberworks, Inc., 625 F.3d 550, 558 (9th Cir.
    2010) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).  See also
21  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007); Miscellaneous Serv. Workers, Drivers
    & Helpers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir. 1981) (affirming the district court's
22  dismissal of the plaintiffs' deceit and misrepresentation claims where plaintiffs failed to allege
    with sufficient particularity the content of the false representations and identities of the parties to
23  the misrepresentations).  "In the context of a fraud suit involving multiple defendants, a plaintiff
    must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'"
24  Swartz, 476 F.3d at 765 (quoting Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir.
    1989)).

25
        [9]  At the May 4, 2012, hearing of defendants' motions to dismiss, plaintiff stated that he
26  did not intend to bring the civil RICO claim against defendants Ocwen or Western Progressive.

1  claim."); <u>Cross v. Wells Fargo Bank, N.A.</u>, No. CV11-00447 AHM (OPx), 2011 WL 6136734, at

2  * 9-10 (C.D. Cal. Dec. 9, 2011) (finding the allegations that defendants' "use of intentional

3  nondisclosure" and "creation of fraudulent loan documents" failed "to meet the particularity

4  requirements for a RICO claim because they fail to state the time, place, and specific content of

5  the false representations."); <u>Solano v. America's Servicing Co.</u>, No. 2:10-cv-02426-GEB-GGH,

6  2011 WL 4500874, at *10 (Sept. 27, 2011) (finding similar allegations insufficient to state a civil

7  RICO cause of action because the complaint did not allege "facts concerning the time, date, and

8  place of the alleged misrepresentations and non-disclosures, the identity of who made them, or

9  the role of each Defendant"); <u>Sound Appraisal v. Wells Fargo Bank, N.A.</u>, No. C 09-01630 CW,

10  2009 WL 3353057, at *4 (N.D. Cal. Oct. 15, 2009) ("Plaintiffs fail to (1) identify any false

11  statement contained in any appraisal, (2) indicate who performed any false appraisals, (3) identify

12  any of the 'who, what, where, or why' of any alleged false statement with respect to any appraisal

13  or (4) tie any alleged misrepresentations by Defendants to any appraisals."); <u>Aizuss</u>, 847 F. Supp.

14  at 1491 ("Plaintiffs have not pleaded with any particularity how and when defendants used the

15  wires and mails to defraud plaintiffs.").

16         Moreover, even assuming arguendo that plaintiff's allegations met Rule 9(b)'s

17  heightened pleading requirements, such allegations do not support a civil RICO claim.  <u>See</u>

18  <u>Ohlendorf v. American Brokers Conduit</u>, No. CIV. S-11-293 LKK/EFB, 2012 WL 718682, at

19  *11-12  (E.D. Cal. Mar. 5, 2012) ("Neither fraud, in and of itself, nor the creation of fraudulent

20  loan documents are predicate offenses under RICO."); <u>Tilley v. Ampro Mortg.</u>, No. 2:11-cv-1134

21  KJM CKD, 2011 WL 5921415, at *12 (E.D. Cal. Nov. 28, 2011) ("Plaintiff's claim centers on

22  defendants' alleged predatory lending practices and general fraud; however neither fraud, in and

23  of itself, nor the creation of fraudulent loan documents are predicate offenses under RICO.");

24  <u>Derakhshan v. Mortgage Electronic Registration Systems</u>, No. SACV08-1185 AG (RNBx), 2009

25  WL 3346780, at *4 (C.D. Cal. Oct. 13, 2009) (predatory lending is not a predicate offense for

26  RICO).

1    Finally, even if the allegations found in the amended complaint met Rule 9(b)'s

2    heightened pleading requirements and stated a cognizable civil RICO claim, plaintiff's claim

3    would still fail.  In this regard, the statute of limitations for a civil RICO violation is four years.

4    Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001).  "The limitations period for civil RICO

5    actions begins to run when a plaintiff knows or should know of the injury which is the basis for

6    the action."  Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 365 (9th

7    Cir. 2005).  See also King v. State of Cal., 784 F.2d 910, 915 (9th Cir. 1986) ("[A]s a general

8    rule the limitations period starts at the consummation of the transaction.").

9    Here, the amended complaint alleges that the fraudulent loan underlying

10   plaintiff's civil RICO claim against defendant CHL was entered into in 2002.[10]  (Am. Compl.

11   (Doc. No. 27) at 4-5.)  Moreover, plaintiff alleges that prior to applying for the loan in question

12   he was aware that the "asking price" of the property was $100,000 greater than that of the similar

13   property he had wanted to purchase the year before.  (Id. at 5.)   Finally, plaintiff alleges that he

14   refinanced his CHL loan in 2005, obtaining a new loan from another mortgage company.  (Id. at

15   6.)

16   Plaintiff commenced this action approximately nine years after entering into his

17   loan with CHL and six years after that loan was paid off as a result of refinancing.  Thus, any

18   RICO claim against CHL appears to be barred by the applicable statute of limitations.[11]  See

19   McAnelly v. PNC Mortg., No. 2:10-cv-02754-MCE-GGH, 2011 WL 6260537, at *7 (E.D. Cal.

20   Dec. 15, 2011) (granting motion to dismiss in part because "[t]he facts as pled fail to provide the

21   Court with sufficient information to determine whether the allegations comport with the statute

22

23   [10]   In his opposition to the pending motion to dismiss, plaintiff further clarifies his
     allegations, stating that on "October 14, 2002, plaintiff entered into a mortgage loan agreement . .

24   . with CHL to purchase the property which is the subject matter of this suit," that the value of the
     home used to secure the loan was "fraudulently inflated" and that "CHL directly participated in

25   the funding of the loan and resulting injury to plaintiff here."  (Pl.'s Opp.'n (Doc. No. 37) at 5-7.)

     [11]   As noted above, plaintiff does not attempt to allege a RICO claim against defendants
26   Ocwen or Western Progressive.

1  of limitations for the civil RICO statutes."); <u>King v. Capitol Commerce Mortg. Co.</u>, No. 2:11-cv-

2  01255-MCE-DAD, 2011 WL 3501718, at *6 (E.D. Cal. Aug. 8, 2011) (granting motion to

3  dismiss where plaintiff "failed to plead facts sufficient to show that Plaintiff exercised all due

4  diligence in order to bring this claim before the statute of limitations expired."); <u>Jacob v. Aurora</u>

5  <u>Loan Services</u>, No. 10-1789 SC, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010) (dismissing

6  civil RICO claim without leave to amend where "Plaintiff signed her loan documents . . . more

7  than four years before she filed this lawsuit . . . .").

8      Accordingly, for the reasons stated above, defendants' motions to dismiss with

9  respect to plaintiff's RICO claim should be granted.

10  III.  <u>Further Leave to Amend and Supplemental Jurisdiction</u>

11      For the reasons explained above, any claim by plaintiff for relief based upon an

12  alleged violation of federal law should be dismissed for failure to state a claim upon which relief

13  may be granted.  The undersigned has carefully considered whether plaintiff could file a further

14  amended complaint that states a cognizable federal claim that would not be subject to dismissal.

15  "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and

16  futility."  <u>California Architectural Bldg. Prod. v. Franciscan Ceramics</u>, 818 F.2d 1466, 1472 (9th

17  Cir. 1988).  <u>See</u> also <u>Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau</u>, 701 F.2d 1276,

18  1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court does not

19  have to allow futile amendments).  In light of obvious deficiencies noted above, and plaintiff's

20  failure to successfully amend his complaint when provided the opportunity to do so, the

21  undersigned finds that it would be futile to grant plaintiff further leave to amend with respect to

22  any federal cause of action.

23      Moreover, if these findings and recommendations are adopted, only plaintiff's

24  claims based on alleged violation of state law will remain.  A district court may decline to

25  exercise supplemental jurisdiction over state law claims if the district court has dismissed all

26  claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  The court's discretion to

1  decline jurisdiction over state law claims is informed by the values of judicial economy, fairness,

2  convenience, and comity.  Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en

3  banc).  In addition, "[t]he Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated,

4  that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of

5  factors . . . will point toward declining to exercise jurisdiction over the remaining state-law

6  claims.'"  Acri, 114 F.3d at 1001 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.

7  7 (1988)).  See also Satey v. JP Morgan Chase & Co., 521 F.3d 1087, 1091 (9th Cir. 2008)

8  (recognizing this principle but noting that dismissal of the remaining state law claims is not

9  mandatory).

10            Here, two of the three causes of action alleged in plaintiff's amended complaint

11  are based on alleged violations of state law.  Specifically, plaintiff alleges state law causes of

12  action for violation of California Civil Code § 1573 and fraud.   (Am. Compl. (Doc. No. 27) at

13  21-25.)  Of course, "primary responsibility for developing and applying state law rests with the

14  state courts."  Curiel v. Barclays Capital Real Estate Inc., Civ. No. S-09-3074 FCD/KJM, 2010

15  WL 729499, at *1 (E.D. Cal. Mar. 2, 2010).  Here, as in the usual case, consideration of judicial

16  economy, fairness, convenience, and comity all point toward declining to exercise supplemental

17  jurisdiction.  Therefore, the undersigned will also recommend that the assigned district judge

18  decline to exercise supplemental jurisdiction over plaintiff's state law claims and that they be

19  dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

20                                        CONCLUSION

21            Accordingly, IT IS HEREBY RECOMMENDED that:

22            1.  Defendant CHL's March 16, 2012 motion to dismiss (Doc. No. 31) be granted

23  in part;

24            2.  Defendants' Ocwen and Western Progressive's March 16, 2012 motion to

25  dismiss (Doc. No. 34) be granted in part;

26  /////

3.  Plaintiff's civil RICO claim brought pursuant to 18 U.S.C. § 1961 *et seq.* be dismissed with prejudice;

4.  The court decline to exercise supplemental jurisdiction over plaintiff's state law claims and plaintiff's state law claims be dismissed without prejudice under 28 U.S.C. § 1367(c)(3); and

5.  This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 8, 2012.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.pro se\wooten1791.mtd2.f&rs

13